DSS:SA
F. #2010R02303

**M12-0378**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

IN THE MATTER OF THE APPLICATION       AFFIDAVIT IN SUPPORT
FOR A SEARCH WARRANT FOR:              <u>OF A SEARCH WARRANT</u>

ONE BLACKBERRY BOLD T-MOBILE           (T. 21, U.S.C., §
CELL PHONE WITH IMEI NUMBER            846; T. 18, U.S.C.,
352060040124651                        §§ 1959 and 1962(c))

- - - - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

      GEORGE BOAN, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD") assigned to work as a Task Force Officer with the Drug Enforcement Administration ("DEA") duly appointed according to law and acting as such.

      Upon information and belief, there is probable cause to believe that the contents of ONE BLACKBERRY BOLD T-MOBILE CELL PHONE WITH IMEI NUMBER 352060040124651 (the "SUBJECT TELEPHONE"), taken from the defendant DION NELSON at the time of his arrest on September 28, 2010, contain the names, telephone numbers, email, text messages, photographs and videos of the DION NELSON's criminal associates, all of which constitute evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 1962(c), racketeering, violations of Title

18, United States Code, Section 1959, the commission of violent crimes in aid of racketeering, and violations of Title 21, United States Code, Section 846, conspiracy to possess with intent to distribute narcotics.

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I have been a Detective with the NYPD for approximately 20 years and I have been assigned to work with the DEA for the past two years. I have personally participated in the investigation of this case and, based upon that participation and reports made to me by other members of the NYPD, the DEA, immigration and Customs Enforcement ("ICE") as well as other law enforcement agencies (who have either direct or hearsay knowledge of the reported facts), I am familiar with the facts and circumstances of this investigation. Except as otherwise noted, I have not differentiated herein between facts of which I have personal knowledge and facts that were reported to me by fellow law enforcement officers.

2. At all times relevant to this application, the DEA, ICE and the NYPD have been investigating a number of individuls operating, in part, in and around the North Shore of

---

[1] Because the purpose of this Affidavit is solely to set forth probable cause to search, I not have set forth all facts concerning this investigation of which I am aware.

Staten Island, who have been involved in various crimes including conspiracy to distribute narcotics, in violation of Title 18, United States Code, Section 846, the unlawful use and/or possession of firearms, in violation of Title 18, United States Code, Sections 924(c) and 922(g), the commission of violent crimes in aid of racketeering, in violation of Title 18, United States Code, Section 1959, and racketeering, in violation of Title 18, United States Code, Section 1962(c). During the course of this investigation, the DEA, ICE and the NYPD learned of narcotics trafficking and narcotics and gang-related violence occurring in and around the Mariners Harbor and Arlington neighborhoods on the North Shore of Staten Island.

3. Attached hereto as Exhibit A is a superseding indictment filed in this district in United States v. Dion Nelson, 10-CR-0820 (S-1)(NGG). NELSON is currently charged in that case with conspiring to distribute cocaine and cocaine base, in violation of Title 21, United States Code, Section 846, unlawful use of firearms, in violation of Title 18, United States Code, Section 924(c), marijuana distribution, in violation of Title 21, United States Code, Section 841(a), operation of a stash house, in violation of Title 21, United States Code, Section 856, and with being a felon-in-possession of a firearms, in violation of Title 18, United States Code, Section 922(g).

4. The charges in that case are based, in part, on the execution of a search warrant at 55 Holland Avenue, Apartment, 9K (the "Stash House") located in the Arlington Terrace Apartments (the "Holland Houses") in the Arlington neighborhood of Staten Island, New York. Specifically, on September 18, 2009, officers from the NYPD executed a search warrant at the Stash House. The search warrant was issued on September 11, 2009, by the Honorable Catherine Didomenico of the Supreme Court of the State of New York, County of Richmond: Criminal Term.

5. During the execution of the search, the NYPD recovered, among other things, (1) multiple boxes of various types of ammunition including ammunition used for .38, .380, .357, .45, and .25 caliber firearms, (2) two bullet proof vests, (3) numerous empty ziplock bags, (4) multiple ziplock bags containing suspected marijuana, (5) multiple bags containing suspected cocaine and crack-cocaine, (6) a loaded .45 caliber Ruger semi-automatic handgun, (7) a loaded 9 millimeter Glock semiautomatic handgun, (8) a loaded Ruger .357 magnum handgun, (9) a loaded 9 millimeter Beretta semi-automatic handgun, and (10) multiple spent shell casings for .357, 9 millimeter and .45 caliber firearms.

6. Pursuant to the search the NYPD also swabbed a number of the items recovered above to detect for the presence of

DNA. The DNA swabs were vouchered by the NYPD and submitted to the New York City Office of the Chief Medical Examiner ("OCME") for testing to identify for the presence of DNA. Specifically, with respect to the 9 millimeter Beretta semi-automatic handgun, the NYPD submitted swabs of the weapon's (a) trigger, (b) grips, and (c) back strap. Multiple swabs from the loaded 9 millimeter Beretta semi-automatic handgun tested positive for the presence of DNA.

7. Based on additional information obtained during the investigation, the United States Attorney's Office for the Eastern District of New York requested that the OCME compare the DNA recovered from the swabs off the 9 millimeter Beretta semi-automatic handgun to known samples of DNA previously recovered from NELSON. The OCME completed that testing and advised that "DNA alleles from the suspect, DION NELSON, are included in the mixture of DNA from the swabs" from the 9 millimeter Beretta semi-automatic handgun, indicating that NELSON possessed the 9 millimeter Beretta semi-automatic handgun on or about September 18, 2009. Based in part on that information, an arrest warrant for the defendant was issued by the United States District Court for the Eastern District of New York and NELSON was initially charged by complaint with a violation of Title 18, United States Code Section 922(g).

8.  At the time of his arrest on September 28, 2010, DION NELSON was found to be in possession of the SUBJECT TELEPHONE.[FN] NELSON subsequently waived his Miranda rights both orally and in writing. Among other things, NELSON admitted to being a member of the Bloods gang in the past. NELSON claimed to have "retired" from the gang, but (1) admitted that all of the items recovered in the Stash House were in fact his, (2) admitted that he had been using the apartment as a stash house for his guns, drugs, ammunition and body armor, (3) reviewed the federal complaint (attached hereto as Exhibit B) line by line and admitted to owning each and every item detailed therein, (4) reviewed color photographs of the evidence recovered in the Stash House and identified all of the items depicted therein as being his, (5) admitted to having previously fired all of the weapons recovered in the Stash House, (6) admitted to having previously possessed an AK-47 assault rifle which he later sold, (7) admitted to being known as the "Pif" man, because he sold quantities of marijuana in the Arlington neighborhood of Staten Island, (8) admitted that he had previously sold quantities of crack cocaine, and (9) admitted to having shot four people on prior occasions, shootings for which he advised he had not been arrested.

9.  I have also participated in interviews of individuals who have provided additional information about the

FN - At the time of the arrest, I took the SUBJECT TELEPHONE into my custody and it was vouchered and entered into evidence where it remains.

criminal activities of NELSON. Specifically, I have spoken with multiple cooperating witnesses who have been charged with criminal conduct for their involvement in narcotics trafficking, robbery and various firearms offenses. Several of these witnesses have been fully debriefed regarding their criminal conduct and have pled guilty for their crimes pursuant to cooperation agreements with the government.

10. Information provided by these cooperating witnesses has revealed (1) that DION NELSON is a leader of a gang compromised primarily of members residing in and around the Holland Houses and the Mariners Harbor and Arlington neighborhoods of Staten Island that includes members of the Bloods street gang and other individuals who had criminal ties with an individual, now deceased, known as JERMAINE DICKERSEN, also known as "Big Den" and "Big Homie"; (2) that members of the gang, including DION NELSON are involved in the trafficking of crack cocaine and marijuana, among other narcotics; (3) that members of the gang, including DION NELSON, utilized telephones for the purpose of distributing narcotics, and (4) that members of the gang, including DION NELSON are involved in significant violent criminal activity, including the use and discharge of firearms related to that narcotics trafficking and certain gang-related activity.

11. Such information has been corroborated by, among other things, information provided by civilian witnesses, the DNA of the defendant recovered from a firearm located in the Stash House, the presence of crack-cocaine, marijuana, body armor and multiple firearms recovered from the Stash House and the defendant's extensive post-arrest statements admitting to his use of the apartment as a stash house as well as his involvement in four shootings.

12. Based upon my training and experience in narcotics and gang investigations, and my discussions with experienced fellow Detectives, Special Agents and other law enforcement officers, I also know that narcotics distributors and gang members often maintain names, telephone numbers, email, text messages, photographs and videos of their criminal associates in their cellular telephones and that once put into these devices, the records will remain unless affirmative steps are taken to delete them.

13. Furthermore, I know from my training and experience that cellular telephones maintain call logs that record incoming and outgoing telephone numbers, as well as the date and time of the call. Moreover, based upon my experience, I know that these call logs will remain unless affirmative steps are taken to delete them or subsequent calls are made forcing earlier calls out of the memory.

14. I also know from my training and experience that telephones such as the SUBJECT TELEPHONE maintain email, text messages, photographs and videos. I also known that these records will remain in the memory of the phone unless affirmative steps are taken to delete them.

15. The fact that the SUBJECT TELEPHONE was in the possession of the defendant DION NELSON at the time of his arrest, the fact that evidence has shown DION NELSON to be a narcotics trafficker, the fact that evidence has shown NELSON to be member of a criminal gang, the fact that members of DION NELSON's gang, including DION NELSON, utilize telephones for the purpose of distributing narcotics, indicates that the SUBJECT TELEPHONE was in current use, and, in the opinion of your deponent, contains the type of information described above.

16. Based on the above information, there is probable cause to believe that the SUBJECT TELEPHONE that was recovered from the defendant DION NELSON will be found to contain names, telephone numbers, email, text messages, photographs and videos of DION NELSON's criminal associates, all of which constitute evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 1962(c), racketeering, violations of Title 18, United States Code, Section 1959, the commission of violent crimes in aid of racketeering, and violations of Title

21, United States Code, Section 846, conspiracy to possess with intent to distribute narcotics.

WHEREFORE, I respectfully request that a search warrant issue for ONE BLACKBERRY BOLD T-MOBILE CELL PHONE WITH IMEI NUMBER 352060040124651 taken from the defendant DION NELSON at the time of his arrest on September 28, 2010, allowing members of the NYPD, ICE, the DEA and other law enforcement officers to search for and to seize electronically stored information, including names, telephone numbers, email, text messages, photographs and videos of DION NELSON's criminal associates, all of which constitute evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 1962(c), racketeering, a violations of Title 18, United States Code, Section 1959, the commission of violent crimes in aid of racketeering, and violations of Title 21, United States Code, Section 846, conspiracy to possess with intent to distribute narcotics.

_____
George Boan
Detective
NYPD/DEA

Sworn to before me this
16th day of April 2012

/s/ Orenstein
UNITED
EASTERN